U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JULIAN DELMORE, an individual,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>WASHINGTON STATE DEPARTMENT OF CORRECTIONS, an agency of the State of Washington, and LISA FLYNN, in her individual capacity and/or official capacity,<br><br>　　　　　　　　Defendants. | No. 21-cv-05625<br><br>COMPLAINT FOR DAMAGES<br><br>JURY DEMAND |

## I.　INTRODUCTION

Plaintiff Julian Delmore ("Plaintiff" or "Mr. Delmore"), a former employee of Larch Corrections Center, brings this action against Defendant Washington State Department of Corrections, an agency of the State of Washington, and former Larch Superintendent Lisa Flynn (formerly Lisa Oliver-Estes), an individual (in her individual and official capacities), for race discrimination and retaliation in violation of the Civil Rights Act of 1871, *as amended*, 42 U.S.C. § 1983 (for violation of 42 U.S.C. § 1981), and the Washington Law Against Discrimination (WLAD), RCW 49.60 *et seq.*, as follows:

## II. PARTIES

1. Plaintiff Julian Delmore is a resident of Clark County, Washington. Mr. Delmore was employed by Defendant Washington State Department of Corrections at Larch Corrections Center in Clark County, Washington from 2010 to 2017.

2. Defendant Washington State Department of Corrections ("DOC" or "Defendant") is an agency of the state of Washington.

3. Defendant Lisa Flynn (formerly Oliver-Estes) is an employee of the Washington State Department of Corrections, and at all pertinent times herein, was the Superintendent of Larch Corrections Center.

4. At all relevant times, Defendant Flynn was acting within the scope of her employment.

5. At all relevant times, Defendants were acting under color of state law.

## III. JURISDICTION AND VENUE

6. Plaintiff alleges federal claims against the State of Washington and Defendant Flynn under the Civil Rights Act of 1871, *as amended*, 42 U.S.C. § 1983 for violations of 42 U.S.Ct. § 1981.

7. Plaintiff also alleges claims against the State of Washington and Defendant Flynn under the Washington Law Against Discrimination, RCW 49.60 *et seq.*

8. This Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331, which grants district courts jurisdiction over all civil actions arising under the Constitutional, laws, or treaties of the United States.

9. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343(a)(4), which grants district court original jurisdiction over any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

10. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise out of the same case or controversy as the federal claims.

11. This Court has jurisdiction over the parties pursuant to RCW 2.08.010 and RCW 49.60 *et seq*.

12. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims took place in the Western District of Washington.

13. On March 2, 2021, Mr. Delmore served the State of Washington with a Tort Claim for Damages.

14. The State of Washington acknowledged receipt of the tort claim form on May 24, 2021, but did not raise any substantive response, objection or defense to the claim.

15. More than 60 days have passed since service of the tort claim.

16. All administrative or filing prerequisites, if any, to bringing this action have been timely met or exhausted.

## IV. FACTUAL BACKGROUND

**Following his Military Service, Mr. Delmore had a Long and Successful Career as a Custody Officer**

17. Mr. Delmore, a military veteran and ordained minister, began working for the DOC at Larch Corrections Center ("Larch") as a Custody Officer in 2010.

18. Prior to his employment at Larch, Mr. Delmore had worked in Illinois for the Illinois Department of Corrections for 13 years.

19. Prior to working for the Illinois Department of Corrections, Mr. Delmore served in the Army from 1992 to 1995.

20. Throughout his employment at Larch, Mr. Delmore received excellent performance reviews.

21. Mr. Delmore was one of only six (6) Black Custody Officers at Larch, out of more than 100 custody officers.

**There is a Long History of Racism at Larch Corrections Center, especially under former Superintendent Flynn**

22. Larch Corrections Center ("Larch") is a state-run prison facility located 20 miles northeast of Vancouver, Washington in Yacolt, Washington that houses 480 minimum custody incarcerated men.

23. Larch has a long history of race discrimination, evidenced by numerous discrimination and EEOC complaints against it and its former Superintendent, Lisa Flynn.

24. Flynn has referred to Black employees as "colored" in formal meetings at Larch.

25. At least three Black male employees at Larch have brought allegations of race discrimination and retaliation against Larch and former-Superintendent Lisa Flynn in the last five years.

26. Larch, and the Department of Corrections, are aware of these complaints and have taken no action to discipline or retrain Flynn.

27. Black employees who report the misconduct of white employees are retaliated against.

28. White employees who engage in misconduct are given special treatment and lesser punishments than Black employees accused of similar or lesser offenses, or offenses they did not commit.

29. For example:

    a. A Black Custody Officer complained to Larch's leadership about being sexually harassed by a white male supervisor, including that the supervisor had requested the Custody Officer perform oral sex on him. The Custody Officer requested an investigation, but the

leadership laughed it off and did nothing. The Custody Officer resigned due to the hostile work environment and the white supervisor, who was later caught performing oral sex on an inmate, was allowed to resign in lieu of termination.

b. A white employee brought a six-pack of beer to work and was visibly intoxicated. He was simply sent home from his shift, but faced no discipline.

c. A white supervisor was caught with pornographic pictures and a knife in his desk, and was smoking marijuana on the job, and he was not disciplined. He was allowed to retire.

d. As recently as 2020, a white employee had a confederate flag prominently displayed in his car parked in the Larch employees' parking lot. Complaints were made to Larch management, and they did nothing. The employee was not disciplined nor told to remove the confederate flag.

**Mr. Delmore was Falsely Accused of Planting a Knife in an Inmate's Cell and Wrongfully Terminated**

30. In late December 2016, while on duty at Larch, Mr. Delmore became aware of an anonymous report that there was a knife hidden in a specific prison cell.

31. Mr. Delmore, in the regular course of his duties as a Custody Officer, conducted a search of the cell with several other officers, during which he found under a mattress a homemade knife fashioned from scissors.

32. Mr. Delmore, per protocol, recovered this contraband and turned it in.

33. Several days later, Mr. Delmore was contacted at home by then-Superintendent Lisa Flynn, stating that Mr. Delmore was assigned to his home until further notice.

COMPLAINT FOR DAMAGES - 5

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

34. He later learned he had been falsely accused of planting the knife and was under investigation.

35. He was falsely accused by a white inmate who had nothing to do with the incident, in order for that inmate to cover up his own smuggling of drug and tobacco contraband into the prison.

36. Three other white officers and the supervisor on the shift were also named in this inmate's allegations, but were never placed on administrative leave, investigated, or disciplined.

37. The investigation was full of contradictory evidence and testimony and confirmed that Mr. Delmore had no motive or reason to plant evidence.

38. Nonetheless, on September 6, 2017, Flynn terminated him from employment at Larch for allegedly planting the knife in the inmate's cell.

**Mr. Delmore and his Union Mounted an Aggressive Defense to his Termination Based on these False Allegations**

39. After his termination, Mr. Delmore and his union, Teamsters Local 117 mounted an aggressive challenge to Mr. Delmore's wrongful termination.

40. Mr. Delmore and his union filed a grievance, alleging that the termination was discriminatory, for no "just cause," and demanding his reinstatement.

41. During a grievance hearing in November 2017, Mr. Delmore and his union established conclusively that the allegations that Mr. Delmore planted the knife in the inmate's cell were false and that there was no "just cause" for his termination.

42. The hearing officer took the issue under advisement and planned to issue a decision on his reinstatement within several weeks.

43. It was widely expected that his name would be cleared and there were plans to reinstate him, with a tentative date of return being discussed.

44. But in late December 2017, in the weeks before the decision was issued, then-Superintendent Flynn reported Mr. Delmore's case to the Clark County Sheriff's Department.

45. This referral, taken an entire year after Mr. Delmore's termination, was retaliation by Defendant Flynn for Mr. Delmore's complaints of race discrimination and for him filing a grievance alleging race discrimination.

46. This retaliation was done with the purpose of preventing Mr. Delmore's reinstatement.

47. As a result of then-Superintendent Flynn's referral, Mr. Delmore was charged with four felonies for crimes he did not commit: 1) introducing contraband in the first degree; 2) possession of a weapon in a prison or jail by a non-prisoner; 3) malicious prosecution of a felony; and 4) tampering with a witness.

48. In the more than 13 months between when Mr. Delmore recovered the knife in the course of his duties as a Custody Officer and when Flynn referred the case to the Clark County Sheriff, there had been no criminal investigation against him by the Clark County Sheriff, Vancouver Police Department, or the Attorney General's office, and Mr. Delmore had never been interviewed by the police.

49. As a result of the still-ongoing criminal case, Mr. Delmore's grievance and reinstatement are on hold.

50. As a result of Defendants' actions, including the still-ongoing criminal case, Mr. Delmore has suffered emotional distress and economic damages.

51. On reason and belief, Defendants have withheld exculpatory evidence during the criminal proceedings.

52. In September 2019, Lisa Flynn was transferred out of Larch following a series of complaints and lawsuits.

53. Flynn remains a cooperating, involved, key witness in the criminal case against him, which is set for trial in October 2021.

## V.    CLAIMS

**Discrimination and Retaliation in Violation of 42 U.S.C. § 1981 and 1983 of the Civil Rights Act**

54. Mr. Delmore incorporates the allegations above as if fully alleged herein.

55. Under color of law, Defendants discriminated against Mr. Delmore in investigating, disciplining, and terminating him based on his race.

56. Under color of law, Defendants treated Mr. Delmore differently than his white colleagues in their investigation, discipline, and termination of him.

57. Under color of law, Defendants retaliated against Mr. Delmore for raising complaints of race discrimination by disciplining and terminating him.

58. Under color of law, Defendant Flynn retaliated against Mr. Delmore for raising complaints of race discrimination and filing a grievance by initiating criminal charges against him upon the eve of his being reinstated, and continuing to cooperate in the criminal proceedings against him.

59. Defendant Flynn was personally involved Mr. Delmore's discipline, termination, the interference with the union grievance process, and the initiation of the baseless criminal charges against him.

60. Defendant Flynn intentionally violated clearly established statutory rights under 42 U.S.C. § 1981 of which a reasonable person would have known.

61. But for his race, Defendants would not have disciplined, terminated, or retaliated against Mr. Delmore.

62. Defendants thereby violated, under color of law, the Civil Rights Act of 1871, *as amended*, § 1981, which prohibits discrimination on the basis of race when making and enforcing contracts, of which employment is one.

63. Plaintiff brings this claim for violations of 42 U.S.C. § 1981 through 42 U.S.C. § 1983.

//

**Retaliation in violation of the Washington Law Against Discrimination, RCW 49.60 *et seq.***

64.   Mr. Delmore incorporates the allegations above as if fully alleged herein.

65.   Defendants have retaliated against Mr. Delmore for opposing and raising complaints of race discrimination during and after his employment at Larch Corrections Center, in violation of RCW 49.60.210(1), the Washington Law Against Discrimination.

66.   Defendants retaliated against Mr. Delmore by interfering with his grievance determination and reinstatement and referring charges to the Clark County Sheriff.

67.   Defendants retaliated against Mr. Delmore by continuing to cooperate and participate in the criminal proceedings against him.

## VI.   PRAYER FOR RELIEF

68.   Plaintiff seeks judgment against Defendant awarding Plaintiff the following forms of relief:

(a)   An award of all general and special damages that are established at trial;

(b)   An award of compensatory damages, including emotional harm, and/or physical injury;

(c)   An award of back pay and front pay for lost wages and benefits;

(d)   An award of actual and reasonable attorneys' fees and litigation expenses as provided by law;

(e)   An award of punitive damages pursuant to 42 USC §1981(a);

(f)   Pre-judgment interest on all amounts awarded as allowed by law;

(g)   Post judgment interest;

(h)   A supplemental award to cover any adverse tax consequences of the judgment; and

(i)   Such other equitable, legal, or additional relief as may be appropriate and just.

DATED: August 27, 2021.

          BRESKIN JOHNSON TOWNSEND, PLLC

          By: s/ *Cynthia Heidelberg*
              Cynthia J Heidelberg, WSBA #44121
              1000 Second Avenue, Suite 3670
              Seattle, WA 98104
              Tel: (206) 652-8660
              cheidelberg@bjtlegal.com

          *Attorney for Plaintiff*